FILED IN CHAMBERS
U.S.D.C. Rome

SEP 1 2 2006

JAMES N. HATTEN, Clerk
By: _____
                    Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

SHANE CARNEY and CHARITY
CARNEY,

      Plaintiffs,

    v.

GORDON COUNTY, GEORGIA, THE
HOGAN CONSTRUCTION GROUP, LLC,
ROBERT BRUCE SHULER d/b/a C&S
Construction Company, ROY
DAVIS, Individually and in his
official capacities, and
RICHARD R. HARP EXCAVATION,
INC.,

      Defendants,

THE HOGAN CONSTRUCTION GROUP,
LLC,

      Defendant and Third-
      Party Plaintiff,

    v.

ROBERT & COMPANY and M.B. KAHN
CONSTRUCTION COMPANY, INC.,

      Third-Party
      Defendants.

CIVIL ACTION
NO 4:06-CV-36-RLV

O R D E R

This is an action under the Clean Water Act, 33 U.S.C. §§ 1362(6) and 1344, and 42 U.S.C. § 1983; the plaintiffs also assert state causes of action for inverse condemnation, nuisance, trespass, negligence (and negligence per se), and violation of their riparian rights. They seek damages, injunctive relief, punitive damages, and attorney's fees. Pending before the court

are Gordon County and Roy Davis's motions for leave to file a
motion for partial judgment on the pleadings [Doc. No. 47] and to
exceed the  page limitations imposed by the local rules of this
court [Doc. No. 48], and the plaintiffs' motion to exceed the page
limitations imposed by the local rules of this court [Doc. No. 53].
These three motions are GRANTED.[1]

## I. FACTUAL BACKGROUND

On a motion to dismiss, the court accepts the factual
allegations of the complaint as being true and construes these
facts in the light most favorable to the plaintiff.   Thaeter v.
Palm Beach County Sheriff's Office, 449 F.3d 1342 (11th Cir. 2006).
Consequently, the following facts are derived from the plaintiffs'
complaint.

The plaintiffs own a 120-acre farm in Gordon County.   They
maintain their residence on the property; they also operate the
property as a working farm, raising chickens and using portions of

---

[1] The plaintiffs did not oppose Gordon County and Davis's
motion for leave to file a motion for partial judgment on the
pleadings; instead, they addressed the merits of the motion for
partial judgment on the pleadings, which had been attached to the
motion for leave.  Because the parties have addressed the merits of
the motion for partial judgment on the pleadings, the court grants
the motion for leave nunc pro tunc and will also proceed to address
the merits of the motion for partial judgment on the pleadings.
Additionally, even though the plaintiffs filed an amended complaint
after the motion for leave was filed, the amended complaint did not
change the plaintiffs' allegations against Gordon County and Davis
but simply added Richard R. Harp Excavation, Inc., as a party
defendant.

the property for grazing purposes.  Gordon County owns a 75-acre tract of land adjacent to the plaintiffs' property and is developing that site for recreational purposes.

Jack Creek is a part of the Pine Log Creek watershed in Gordon County and is a tributary to the Etowah River.  Jack Creek flows across both the plaintiffs' property and the recreational area being developed by Gordon County.  Jack Creek flows into other streams and wetlands located downstream from the plaintiffs' property.

Pursuant to the county's plan to develop the recreational area, the defendants planned, directed, controlled, and performed clearing and grading of the property in the fall of 2004.  They also designed, directed, constructed, implemented, and maintained the water drainage systems and erosion control measures on the site with the knowledge that these activities would significantly increase the flow of water, mud, and silt into Jack Creek and onto the plaintiffs' property.

In September 2005, the defendants' actions resulted in a significant increase in the volume of water, mud, silt, and debris flowing from the recreational site onto the plaintiffs' property during and after rainfalls.  The defendants' activities on the recreational site also created point sources from which there was a significant increase in the flow, velocity, and turbidity of the

water, and the infiltration of mud, silt, and other pollutants entering Jack Creek during and after rainfalls.

On October 31, 2005, the plaintiffs sent a notice letter to, among others, Gordon County, detailing various alleged violations of the Clean Water Act.  When the defendants failed to take action as a result of that letter, the plaintiffs then filed this action. Subsequently, Gordon County and Roy Davis filed the pending motion for partial judgment on the pleadings.[2]

## II. LEGAL DISCUSSION

The Clean Water Act allows a private citizen to bring a civil action on his own behalf against "(1) any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator [of the Environmental Protection Agency] or a State with respect to such standard or limitation, or (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."   33 U.S.C. § 1365(a).

---

[2] In responding to this motion, the plaintiffs stated that they had no objection to the claims asserted against Davis in his individual capacity being dismissed without prejudice.  Since the claims asserted against Davis in his official capacity are in actuality claims against Gordon County, Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099 (1985), Cameron v. Land, 274 Ga. 122 (2001), and since Gordon County is a party to this action, there is no need to have Davis in his official capacity as a party to this suit.  Consequently, all claims against Davis are dismissed without prejudice, and he is dismissed as a party.

However, section 1365 goes on to provide that "[n]o action may be commenced" prior to 60 days after the plaintiff has given notice of the alleged violation to (1) the Administrator, (2) the State in which the alleged violation occurs, and (3) to any alleged violator.

The regulations issued pursuant to this code section prescribe the procedures governing the giving of notice and also prescribe the contents of the notice:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a)

The regulations also provide, "The notice shall state the name, address, and telephone number of the legal counsel, if any, representing the person giving the notice." 40 C.F.R. § 135.3(c).

In interpreting virtually identical language in the Resource Conversation and Recovery Act, 42 U.S.C. § 6972, the Supreme Court held that the 60-day notice requirement was a mandatory precondition to suit and is not subject to waiver or tolling.[3]

_____

[3] The Supreme Court noted that the language in section 6972 was modeled on the language found in the Clean Air Act, 42 U.S.C. § 7604, and that numerous other statutes, including the Clean Water Act had incorporated notice provisions patterned after section

5

Hallstrom v. Tillamook County, 493 U.S. 20, 110 S.Ct. 304 (1989). The Eleventh Circuit, citing to *Hallstrom*, has specifically held that the language in section 1365(a) "is a mandatory condition precedent to the filing of a citizen suit under the Clean Water Act. If a plaintiff fails to comply with this notice requirement where it is applicable, the district court is required to dismiss the action." National Environmental Foundation v. ABC Rail Corp., 926 F.2d 1096, 1097-98 (11th Cir. 1991).

The holdings of *Hallstrom* and *National Environmental Foundation*, however, do not resolve the issue before this court, since in those cases no notice whatsoever was given to certain agencies. In the instant case, it is undisputed that the plaintiffs sent notices within the 60-day period. In moving for partial judgment on the pleadings, Gordon County argues that notice, although timely given, was insufficient to give it proper notice as to precisely what improper actions it was taking. In the absence of Eleventh Circuit authority, Gordon County, not surprisingly, asks this court to require strict adherence to the notice requirements, whereas the plaintiffs argue that reasonable compliance should suffice.

In Washington Trout v. McCain Foods, Inc., 45 F.3d 1351, 1354 (9th Cir. 1995), cited by the plaintiffs, the court, "guided by the Court's decision *Hallstrom*," held that strict compliance was

---

6972.  *Hallstrom,* 493 U.S. at 23, 110 S.Ct. at 307.

required.  However, this court places little reliance on *Washington Trout*, since it mischaracterizes both the facts and the holding of *Hallstrom.*  In *Washington Trout,* the Ninth Circuit stated:

> The plaintiffs' understanding of the *Hallstrom* decision is misplaced. In *Hallstrom*, the petitioners did send a notice to the respondent that they argued qualified as notice under the statute. *See Hallstrom*, 493 U.S. at 23, 110 S.Ct. at 307-08. The issue in *Hallstrom* was whether the notice was sufficient under the regulation's mandate-whether the notice requirement should be strictly construed or liberally applied by the district courts. The Court held the notice requirement under the regulations was to be strictly construed. Therefore, the *Hallstrom* decision does not stand for the fact that without any notice, there could be no suit. Rather, the Court held that the notice requirements set forth in the regulation must be satisfied before the case may be heard in federal district court.

This characterization is simply wrong.  In *Hallstrom,* the plaintiffs had sent notice to the respondent, Tillamook County, and filed suit one year later; however, at the time that they filed suit, the plaintiffs had not sent notice to Oregon's Department of Environmental Quality and the EPA, as required by the statute. When Tillamook County moved to dismiss for failure to comply with the notice provisions of the Resource Conservation and Recovery Act, the plaintiffs immediately sent notice to Oregon's Department of Environmental Quality and the EPA.  The district court held that this later notice was sufficient and denied the motion to dismiss. The Ninth Circuit reversed, holding that the plaintiffs' failure to comply with the 60-day notice requirement as to   Oregon's Department of Environmental Quality and the EPA deprived the

district court of jurisdiction.   The Supreme Court affirmed.   The *sufficiency* of the notice was never an issue in *Hallstrom*, only its timeliness.     Because   of   its   blatant   mischaracterization   of *Hallstrom*, this court finds any discussion by the *Washington Trout* court to be particularly unpersuasive.

Sierra Club Ohio Chapter v. City of Columbus, 282 F. Supp.2d 756 (S.D. Ohio 2003), also cited by the plaintiffs, does stand for the proposition that the notice required by section 1365 must be in strict compliance with the regulations and provide notice of the specific violations alleged to have occurred.   To support its conclusion,   however,   that   district   court   cited   and   relied   on Atlantic   States   Legal   Foundation,   Inc.   v.   United   Musical Instruments, U.S.A., Inc., 61 F.3d 473 (6th Cir. 1995).   This court believes   that   *Sierra Club*   reads   too   much   into   *Atlantic States.* *Atlantic States* dealt with a situation where the plaintiff in its notice had referenced "violations not yet known."   The court's holding that this notice was inadequate is a far cry from holding that the notice requirement must be "strictly complied with."

In Atwell v. KW Plastics Recycling Division, 173 F. Supp.2d 1213 (M.D. Ala. 2001), the district court noted and discussed the split   of   authority   with   respect   to   the   notice   requirement   of section 1365 and eventually concluded, "[A] strict interpretative approach is the proper way to address the sufficiency of notice

issue under 40 C.F.R. § 135.3." *Atwell*, 173 F. Supp.2d at 1221.

The court went on to explain why it had reached this conclusion:

> As discussed in *Hallstrom*, the primary purposes of the
> notice requirement are the avoidance of unnecessary
> litigation and the appraisal of the relevant enforcement
> agencies. 493 U.S. at 29, 110 S.Ct. 304. While the
> language of the regulation clearly requires something
> less than a thoroughly detailed account of every possible
> allegation, the court finds that this does not relieve
> the plaintiff of the duty to provide as much information
> as possible. Theoretically, a plaintiff provides
> "sufficient information to permit the recipient to
> identify" the pertinent aspects of a violation whenever
> he gives the most general notice. A general notice letter
> might prompt a violator or an agency to investigate the
> inchoate allegations and develop the information needed
> for a decision on how to proceed. But given the purposes
> of the notice requirement, this cannot be what Congress
> and the EPA had in mind.
>
> Citizen suit enforcement of environmental laws was
> intended to supplement agency enforcement. Furthermore,
> the notice requirement of the CWA provides a relatively
> short period in which an alleged violator may correct any
> problems and avoid a lawsuit. Allowing a plaintiff to
> provide minimal information in a notice letter before
> bringing suit would place a heavy burden on alleged
> violators and enforcement agencies alike, a burden
> inconsistent with the policy goals of the notice
> requirement as articulated in *Hallstrom*.
>
> *Atwell*, 173 F. Supp.2d at 1221-22.

The problem with *Atwell* is that after the court stated that a

"strict interpretive approach" was the proper way to address the

notice requirement, it then went on to state its holding and

interpreted 40 C.F.R. § 135.3 "as requiring the plaintiff to

provide enough information to enable both the alleged violator and

the appropriate agencies to identify the pertinent aspects of the

alleged violations without undertaking an extensive investigation

of their own. To hold otherwise would frustrate the legislative intent behind the notice provision." *Id.* at 1222.  This holding seems to be much more in line with a "substance compliance" than a "strict compliance" approach; at a minimum, it appears to utilize some middle-ground approach.

One other difficulty with requiring "strict compliance" with section 1365 and 40 C.F.R. § 135.3 is that section 135.3 itself uses the language "*sufficient information* to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated," etc. (emphasis added).  Thus, even strict compliance would seem not to require specific information as to the alleged violation.   *See, e.g.,* Community Association for Restoration of the Environment v. Henry Bosma Dairy, 305 F.3d 943, 951 (9th Cir. 2002) (purporting to apply the "strict compliance" standard but stating, "The key language in the notice regulation is the phrase 'sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance.")

In asking this court to adopt a "substantial compliance" standard, Gordon County relies on cases like Public Interest Research Group v. Hercules, Inc., 50 F.3d 1239 (3d Cir. 1993).  In *Hercules*, the court rejected the district court's conclusion that the statute and regulations required strict compliance:

> While there is no doubt that such detailed information is
> helpful    to    the    recipient    of    a    notice    letter    in

10

identifying the basis for the citizen suit, such specificity is not mandated by the regulation. The regulation does not require that the citizen identify every detail of a violation. Rather, it states that "[n]otice regarding an alleged violation shall include sufficient information to permit the recipient to identify" the components of an alleged violation. 40 C.F.R. § 135.3(a) (emphasis added).

We read the regulation to require just what it says: that the citizen provide enough information to enable the recipient, i.e., Hercules, EPA and/or the State, to identify the specific effluent discharge limitation which has been violated, including the parameter violated, the date of the violation, the outfall at which it occurred, and the person or persons involved.

. . . .

A general notice letter that fails sufficiently to inform its recipients of the violations upon which a citizen intends to bring suit will not conform to the Act's requirement. However, the citizen is not required to list every specific aspect or detail of every alleged violation. Nor is the citizen required to describe every ramification of a violation.

50 F.3d at 1247-48.

As foregoing discussion indicates, much of the argument about the kind and form of notice mandated by the statute and regulations is a semantical debate, and a court's use of particular language does not necessarily reflect the practical effect of that language. Without staking out a position as to which line of cases is "correct," this court will simply follow the lead of the Seventh Circuit, which has succinctly stated its position as follows: "In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." Atlantic

11

States Legal Foundation, Inc. v. Stroh Die Casting Co., 116 F.3d

814, 819 (7th Cir. 1997).   Within this framework, the court

proceeds to determine whether the notice sent by the plaintiffs on

October 31, 2005, met the requirements of 33 U.S.C. § 1365 and 40

C.F.R. § 135.3.

That letter contained, *inter alia*, the following language:

> The notice letter hereby alleges that the land
> disturbance and other development activities undertaken
> by some or all of the above listed parties on The
> Sonoraville Recreation Complex and Sonoraville School
> properties in Gordon County, Georgia, have resulted in
> discharges which violate Section 301(a) of the Clean
> Water Act, 33 U.S.C. § 1311(a), in that either a point
> source discharge permit under the National Pollutant
> Discharge Elimination System ("NPDES"), Section 402 of
> the Clean Water Act, 33 U.S.C. § 1242, for discharge of
> dirt, sand, rock, eroded soil, sediment, debris,
> stormwater [*sic*], and other pollutants from The
> Sonoraville Recreation Complex and Sonoraville School
> properties into waters of the United States has not been
> obtained or that the terms of any such permit obtained
> have been violated.   In particular, these activities
> involve the discharge of sediment, rock, sand and dirt
> which are "pollutants" under the Clean Water Act Section
> 502(6), 33 U.S.C. § 1362(6) and *United States v. M.C.C.
> of Florida, Inc.*, 77 F.2d 1501, 1505-06 (11th Cir. 1985),
> *vacated and remanded on other grounds,* 481 U.S. 1034
> (1987).   These discharges are the direct result of the
> activities of the above listed parties on The Sonoraville
> Recreation Complex and Sonoraville School properties.

The letter went on to list various actions that were alleged to be

in violation of the Clean Water Act, including (1) land disturbance

and other development activities that were initiated and continued

without the proper installation of erosion and sediment control

structures, leading to the ongoing discharge of rock, sand, dirt,

12

and sediment, (2) the discharge of pollutant-laden storm water, and
(3) discharging dredge and fill material into wetlands and waters
of the United States without a proper permit.

The letter also informed the recipients that they were

alleged to be causing, contributing to, or engaging in
land disturbance and other related development activities
on The Sonoraville Recreation Complex and Sonoraville
School properties which have resulted in the violations
of the Act discussed herein.  Said violations began no
later  than  October  12,  2005,  and  are  presently
continuing.  A sample listing of some specific dates such
violations have occurred include, but is not limited to,
the following: [the letter then lists 22 dates in 2004
and 49 dates in 2005].  Of course, this list continues
to grow each day.  Moreover, additional discharges have
occurred, and continue to occur, with each rain event
from the start of land disturbing activities to the
present. (bold in original).

Finally, the letter states that development on the sites have
resulted in the violation of four specific provisions of the
Georgia Department of Natural Resources Rules and notes that the
violations are "ongoing at this time."

Gordon County attacks the notice letter from several
directions.  First, Gordon County notes that it is based on a form
letter that has been used in other Clean Water Act cases.  However,
Gordon County acknowledges that the letter is different from those
other letters in that the letter in this case names different
responsible parties, different development sites, and different
dates for violations.  Gordon County contends that since the letter
is drafted "at such a high level of generality to allow it to be
used in different cases," Brief in Support Motion of Defendants

13

Gordon County, Georgia, and Roy Davis for Partial Judgment on the
Pleadings at 10, it cannot provide the specificity as to violations
required by the Act and regulations.   This court concludes,
however, that the mere use of a form letter in preparing a notice
of violations is an insufficient basis, standing alone, to reject
the  notice.

Gordon County also argues that the plaintiffs' use of the
disjunctive (the recipients had violated section 301(a) of the
Clean Water Act in that "either a point source discharge permit .
. . has not been obtained or that the terms of any such permit
obtained have been violated") provided it with "[s]uch an
inherently contradictory contention" that it was unable "to
identify the specific standard or limitation alleged to be
violated." Brief at 10-11.  This court disagrees.  The October 31
letter informed Gordon County that actions it was taking were
either without a permit or were in violation of a permit if the
permit had been issued.  Such notification is merely alternative;
it is not "inherently contradictory."  This information was
sufficient to place Gordon County on notice that certain actions
were improper and should be investigated.

Gordon County goes on to argue that the letter did not
sufficiently identify the location of the alleged violations and
that the letter's reference to violations of section 404 of the
Clean Water Act is too vague to alert it as to the specific

14

violations alleged to have occurred.  The court agrees that the letter could have been more carefully and precisely drawn, but after considering the letter as a whole, the court concludes that it is "sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit."[4]  *Stroh Die Casting Co.*, 116 F.3d at 819.

Finally, Gordon County argues that the October 31 letter is technically deficient because it did not include the plaintiffs' phone number as required by 40 C.F.R. § 135.3(a), which provides that the notice "shall include . . . the full name, address, and telephone number of the person giving notice."  Sierra Club Ohio Chapter v. City of Columbus, 282 F. Supp.2d 770 (S.D. Ohio 2003), cited by Gordon County does make the statement that the lack of a phone number in the notice (and, thus, the failure to strictly comply with 40 C.F.R. § 135.3) did deprive it of jurisdiction.  However, this court declines to follow that case.  First, that statement was dicta, since the court went on to say that it was dismissing the complaint because the notice letter had "failed, *in its substance*, to comply with the notice requirements of 33 U.S.C.

---

[4]  The court acknowledges that a very close question is presented as to whether allegations in the complaint regarding engineering deficiencies (see, *e.g.*, paragraphs 47 and 48 of the Amended Complaint) are encompassed in the notice letter's reference to installation and maintenance deficiencies.  However, the court feels it is better to err on the side of having all issues litigated.

15

§ 1365 and 40 C.F.R. § 135.3."  282 F. Supp.2d at 775.  This court holds that the mere failure to provide the sender's phone number does not warrant dismissing a complaint pursuant to 40 C.F.R. § 135.3.

In Count Three of the Amended Complaint, the plaintiffs assert a federal takings claim (under the Fifth Amendment through the Fourteenth Amendment) pursuant to 42 U.S.C. § 1983.  Gordon County argues that this claim is not ripe, since the plaintiffs have failed to seek just compensation through the procedures available to them under Georgia law.  The plaintiffs, citing Patsy v. Board of Regents, 457 U.S. 496, 102 S.Ct. 2557 (1982), argue that they are not required to exhaust their state judicial or administrative remedies before bringing a claim under section 1983.  The plaintiffs, however, have confused exhaustion with ripeness.

In Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108 (1985), the Supreme Court observed that the Fifth Amendment did not proscribe the taking of property; instead, it proscribes the taking of property without just compensation.  The Court went on to say:

> If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking. Monsanto, 467 U.S., at 1013, 1018, n. 21, 104 S.Ct., at 2878, 2881, n. 21. Thus, we have held that taking claims against the Federal Government are premature until the property owner has availed itself of the process provided by the Tucker Act, 28 U.S.C. § 1491. . . . Similarly, if a State provides an adequate procedure for seeking just

16

compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

473 U.S. at 194-95, 105 S.Ct. at 3121.

Noting that the Constitution does not require predeprivation process or compensation, the Court stated that such process was not required "because it would be impossible or impracticable to provide a meaningful hearing before the deprivation. Instead, the Constitution is satisfied by the provision of meaningful postdeprivation process. Thus, the State's action is not 'complete' in the sense of causing a constitutional injury 'unless or until the State fails to provide an adequate postdeprivation remedy for the property loss.' Hudson v. Palmer, 468 U.S. 517, 532, n. 12, 104 S.Ct. 3194, 3203, n. 12, 82 L.Ed.2d 393 (1984)." *Id.* at 195, 105 S.Ct. at 3121.

Georgia provides the postdeprivation process required by the Fifth Amendment through an inverse condemnation action. *See, e.g.,* Department of Transportation v. Ogburn Hardware & Supply, Inc., 273 Ga. App. 124 (2005); Department of Transportation v. Grunnels, 175 Ga. App. 632 (1985).

Because the plaintiffs have not availed themselves of Georgia's inverse condemnation procedure, their section 1983 claim for violation of their Fifth and Fourteenth amendment rights is premature. Consequently, Gordon County is entitled to judgment on the pleadings as to Count Three of the Amended Complaint.

17

In Count Four, the plaintiffs assert an inverse condemnation claim pursuant to Art. I, § III, ¶ 1 of the Georgia Constitution. In Count Five, the plaintiffs assert a claim for nuisance. However, the Georgia Supreme Court has held that counties cannot be held liable for a nuisance that does not rise to the level of a taking of property.  *See* DeKalb County v. Orwig, 261 Ga. 137 (1991).  Moreover, the damages recoverable in such an action are "governed by rules for damages in a condemnation action."  Fulton County v. Wheaton, 252 Ga. 49, 51 (1984).

The plaintiffs argue that they should be able to assert both claims, as separate claims, in the same lawsuit, and to support that position they purport to quote the following language from Duffield v. DeKalb County, 242 Ga. 432, 433 (1978):

> Where a nuisance disrupts a property owner's use and enjoyment of its property, the property owner may seek damages through a common law action for nuisance and/or through an inverse condemnation action, treating the nuisance as a taking.

The problem is that that language nowhere appears in *Duffield*. Instead, the *Duffield* court simply stated that the Georgia Constitution "provides for a waiver of sovereign immunity where a county creates a nuisance which amounts to an inverse condemnation."  242 Ga. at 433.  That court never discussed, nor even hinted at, the possibility of bringing separate claims for nuisance and inverse condemnation in the same lawsuit.

18

Since the plaintiffs' nuisance claim is subsumed in their inverse condemnation claim, the court will strike Count Five from the Amended Complaint.

To the extent that the plaintiffs' other state law claims against Gordon County (*i.e.*, trespass, negligence and negligence per se, and violation of their riparian rights) are not subsumed in their inverse condemnation claim, Gordon County is entitled to sovereign immunity as to those claims.  The sovereign immunity enjoyed by the State of Georgia pursuant to Art. I, § II, ¶ IX(e), is also enjoyed by Geogia counties,  Toombs County v. O'Neal, 254 Ga. 390 (1985), and such immunity may be waived only by statute. Art. I, § II, ¶ IX; O.C.G.A. § 36-1-4.  Since the plaintiff has not shown that Gordon County has waived sovereign immunity with respect to the state law claims (other than for inverse condemnation), the court holds that Gordon County is entitled to sovereign immunity. *See* Spalding County v. Blanchard, 275 Ga. App. 448 (2005) (burden is on plaintiff to show waiver of sovereign immunity, not upon defendant to prove sovereign immunity as an affirmative defense).

### III. Summary

Gordon County and Roy Davis's motion to exceed the  page limitations imposed by the local rules of this court [Doc. No. 48] is GRANTED. The plaintiffs' motion to exceed the page limitations imposed by the local rules of this court [Doc. No. 53] is GRANTED. Gordon County and Roy Davis's motion for leave to file a motion for

partial judgment on the pleadings [Doc. No. 47] is GRANTED *nunc pro tunc.* All claims against Roy Davis, in both his individual capacity and official capacity are dismissed without prejudice. Gordon County's motion for partial judgment on the pleadings is GRANTED to the extent that Count Five is subsumed in Count Four (therefore, Count Five is stricken) and is further GRANTED with respect to all other state claims; in all other respects the motion is DENIED.

SO ORDERED, this *12TH* day of September, 2006.

ROBERT L. VINING, JR.
Senior United States District Judge

20